MR. CHIEF JUSTICE HASWELL
delivered the opinion of the Court.
Following a jury trial in the District Court of Ravalli County, defendant was convicted of criminal mischief, a felony, by reason of damaging a pickup with the purpose of defrauding an insurer. Defendant appeals from the judgment of conviction.
This is an appeal following the second trial of this case. This Court reversed the first conviction of defendant for procedural errors in admitting “other crimes” evidence. State v. Gray (Mont. 1982), 643 P.2d 233, 39 St.Rep. 622.
The present case is a retrial of defendant on the original charge before a different judge and jury. In essence, the State’s evidence indicated that defendant considered his pickup a “lemon” and wanted to get rid of it; that his insurance on the pickup was being canceled effective August 31, 1980; that on August 28, he intentionally drove the vehicle over a steep bank on the Skalkaho road to collect the insurance; that defendant and one Stephen Forsman concocted a story that defendant was forced off the road by a truck hauling a horse trailer; that thereafter the insurance adjuster determined that the pickup was not a total loss but was repairable; and thereafter one Terry Atkins vandalized the pickup with defendant driving Atkins to its location and acting as a lookout.
Defendant’s evidence essentially consisted of a refutation of the state’s evidence by impeachment of the State’s witnesses together with testimony concerning the events in question. Basically, defendant testified that he left his trailer on the evening of August 28, in a rage to drive up to Skalkaho Falls to cool off; that he did not like Stephen Forsman and was mad at his stepdaughter Léala for run *264 ning around with Forsman; that they followed him in another vehicle and when he looked over his shoulder to see if they were still following him, his pickup went over the bank on the Skalkaho road and injured him; that the story about being forced off the road by a truck and horse trailer was entirely the invention of Stephen Forsman but he went along with it to protect Forsman. Defendant denied any complicity in later vandalizing his pickup and denied prior knowledge of cancellation of the insurance on his pickup. Defendant advances three specifications of error:
1. Defendant is entitled to a new trial because of prosecutorial misconduct resulting in the admission in evidence of defendant’s parole status.
2. The refusal of the court to instruct the jury on the lesser included offense of unsworn falsification to authorities, a misdemeanor, constitutes reversible error.
3. The admission of photographs of defendant’s truck after it had been vandalized constitutes reversible error.
At a hearing in chambers on the first day of trial, the following colloquy took place between the opposing attorneys concerning defendant’s parole staus:concerning defendant’s parole status:
“MR. RIDDIOUGH: I would have one final request, Your Honor, and that would be with regards to the fact that Mr. Gray was on parole at the time that this offense was allegedly committed and I would request that the State caution its witnesses before testimony to not mention during their testimony anything regarding any prior convictions or any parole or parole revocation.
“THE COURT: Mr. Murphy?
“MR. MURPHY: Your Honor, in the trial of the first case Mrs. Townsend took great pains to sanitize the record of Mr. Gray’s previous record. In fact, there is an indication on the part of James Bailey that he refused to answer a question put to him by Mrs. Townsend concerning what he did next. What he did next was contact Ralph Fisher, the Defendant’s parole officer. We will again attempt to sanitize *265 the record of any of those references and I will caution my witnesses and attempt to avoid any mention of that.
“MR. RIDDIOUGH: That’s sufficient for me.
“THE COURT: Okay.”
Léala Gray, defendant’s stepdaughter, was called as a witness in the State’s case-in-chief. During direct examination by the prosecutor, the following exchange took place regarding Stephen Forsman, another of the State’s witnesses:
“Q. And so you proceeded back. Did you talk about anything else on the way back?
“A. Well, Steve was mumbling about, what am I going to do. I don’t want to be in trouble. I don’t want to get involved.
“Q. Did that make sense to you? A. Yeah.
“Q. How did you feel that he would be in trouble? A. The conversation at dinnertime would make him feel like he could possibly get in trouble.
“Q. With your father, with the authorities, what kind of trouble? A. Well, see, what we talked about at dinnertime was the trouble we’ve been having with the brown truck and the argument Dad has with C&M Arrow and him being on parole and he knew that since Dad wrecked the truck, that would affect his parole and that would bring in the law and Steve didn’t like the law — doesn’t like the law.”
Later, during the same examination of this witness by the prosecutor in the State’s case-in-chief, the following exchange took place:
“Q. Okay. But you told this story to Officer Bailey because you didn’t want to lie; is that right? A. Because I wanted to help Steve stay out of the scene of this whole thing. I guess the word I’m looking for is cover for Steve.
“Q. And what had Steve done wrong? A. Well, he told them that there was a truck and trailer involved that wasn’t.
“Q. And he told them that because he was afraid he was going to get in trouble? A. Uh-huh.
“Q. For what? A. Because he knew about the argument my *266 dad had with C&M over the truck and he also knew that my dad was on parole.”
At the conclusion of the direct examination of Léala Gray, appellant moved for a mistrial in chambers outside the presence of the jury based upon the eliciting of the testimony of defendant’s parole status by the prosecutor as indicated above.
The court denied the motion for mistrial but gave a cautionary instruction as follows:
“Ladies and gentlemen of the jury, you have received some testimony in this case that the accused, James Gray, was on parole at the time that the events occurred in the instant case.
“You are instructed to entirely disregard such testimony. The status of the accused is totally irrelevant and immaterial to any issue in the case before you and to consider such testimony in your deliberations would be violative of your oaths as jurors.”
Defendant correctly points out that the prosecutor breached his promise to caution Léala Gray against mentioning her stepfather’s parole status. Additionally, questions were asked on two occasions during Léala Gray’s direct examination by the prosecutor that elicited the fact that defendant was on parole. Defendant argues that the evidence that he was on parole at the time of the commission of the crime charged is evidence of other crimes that must pass both the test of admissibility and the test of proper notice before it can be introduced in evidence. State v. Just (1979), 184 Mont. 262, 602 P.2d 957; State v. Case (Mont. 1980), 621 P.2d 1066, 37 St.Rep. 2057; State v. Gray (Mont. 1982), [197 Mont. 348], 643 P.2d 233, 39 St. Rep. 622. Additionally, the prosecutor stated that he purposely did not talk to Léala Gray prior to her testimony, although he had promised to caution her against disclosing her stepfather’s parole status.
It is clear that misconduct by a prosecutor may form the basis for granting a new trial where the prosecutor’s ac *267 tions have deprived defendant of a fair and impartial trial. State v. Bain (1978), 176 Mont. 23, 575 P.2d 919; State v. Toner (1953), 127 Mont. 283, 263 P.2d 971; State v. Hart (Mont. 1981), 625 P.2d 21, 38 St.Rep. 133.
The prosecution admits that it breached its promise to caution Léala Gray against disclosing her father’s parole status during her testimony. The prosecution argues that the State did not intentionally fail to warn Ms. Gray not to mention her stepfather’s parole status; that the State did not purposely elicit from her the testimony concerning her stepfather’s parole status; that any prejudice caused by the mention of defendant’s status was eliminated by the court’s cautionary instruction; and that defense counsel had more than an equal opportunity by virtue of numerous contacts with Léala Gray to prevent this error by warning her himself and that defense counsel also failed to warn her. The State also argues that the error was harmless in any event.
We find no excuse for the failure of the prosecution to warn Léala Gray not to mention her stepfather’s parole status as the prosecutor had promised. However, we hold that under the circumstances of this case the District Court did not abuse its discretion denying the motion for mistrial for testimony concerning defendant’s parole status. Rule 403, Mont.R.Evid., provides the exclusion of relevant evidence that may prejudice the jury. However, as recognized by the Commission on Evidence, “a key element of this rule is the discretion of the judge in deciding whether otherwise relevant evidence is to be excluded.” In State v. Rollins (1967), 149 Mont. 481, 428 P.2d 462, this Court held that on questions of this nature, the “trial judge should have latitude of discretion.” 149 Mont, at 484; see also, State v. Austad (Mont. 1982), 647 P.2d 1373, 39 St.Rep. 356; State v. Azure (1979), 181 Mont. 47, 591 P.2d 1125; Wallin v. Kenyon Estate (1974), 164 Mont. 160, 519 P.2d 1236.
As a matter of law, we cannot hold that the District Court abused its discretion in denying the motion for a mistrial. First of all, the judge stated that from observations of the *268 jury, the impact of Léala Gray’s testimony concerning the defendant’s parole status was minimal. Also, the court cautioned the jury to disregard all evidence of defendant’s parole status as it was irrelevant and immaterial which cured any resulting prejudice to him.
Furthermore, we recognize that prejudice will not be presumed; it must be established from the record that a substantial right was denied. Section 46-20-701, MCA; State v. Wells (Mont. 1983), [202 Mont. 337], 658 P.2d 381, 40 St.Rep. 127; State v. Dupre (Mont. 1982), [200 Mont. 165,] 650 P.2d 1381, 39 St.Rep. 1660. The test of prejudicial error requiring reversal is whether there is a reasonable possibility the inadmissible evidence might have contributed to the conviction. State v. Wells, supra; State v. LaVe (1977), 174 Mont. 401, 571 P.2d 97; also see, Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.
Here, Léala Gray was a hostile witness for the State. She, unlike a law enforcement officer, had no motive to secure her stepfather’s conviction. The State had no influence over her testimony. The evidence supporting defendant’s conviction was substantial, if not overwhelming. Although there were many attempts to impeach various witnesses for both the State and the defendant during the trial, the defendant’s version of events is simply incredible. It was refuted by witnesses Forsman, Atkins, Léala Gray and to some extent by the highway patrolman and the nurse at the hospital. We hold that the totality of circumstances shows no reasonable possibility that the inadmissible evidence might have contributed to defendant’s conviction.
Directing our attention to the second specification of error, we note that the court refused to give defendant’s offered instruction on unsworn falsification to authorities, a misdemeanor. We further note that an identical instruction had been accepted and given by the court in appellant’s first trial.
Defendant argues that the District Court’s instructions must cover every issue or theory having support in the evi *269 dence, and the inquiry of the District Court must only be whether or not any evidence exists in the record to warrant an instruction. State v. Buckley (1976), 171 Mont. 238, 557 P.2d 283; State v. Bouslaugh (1978), 176 Mont. 78, 576 P.2d 261.
The crime with which defendant was charged reads as follows: “45-6-101. Criminal mischief. (1) A person commits the offense of criminal mischief if he knowingly or purposely:
“(c) damages or destroys property with the purpose to defraud an insurer.”
The misdemeanor offense of unsworn falsification to authorities provides that a person commits that offense if with a purpose to mislead a public servant in performing his official function, he utilizes a writing in a manner by which to mislead. Section 45-7-203, MCA.
Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. Here, the elements of the crime of unsworn falsification to authorities are not required to be proved to establish the crime of criminal mischief.
To determine if one crime is a lesser included offense of another, the statutory elements of the respective offenses, not the facts of the individual case, control. Blockburger v. United States, supra. A simple reading of the two statutes makes it clear that the elements necessary to constitute the two crimes are separate and distinct, having little in common.
Finally, defendant argues that he is entitled to a new trial because several photographs of defendant’s damaged pickup after it had been vandalized were admitted in evidence. Defendant contends that as he has not been charged *270 with committing the vandalism the photographs were evidence of other crimes. In substance defendant says that the evidence should have been excluded as its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury as set forth in Rule 403, Mont.R.Evid. Also see, State v. Azure (1979), 81 Mont. 47, 591 P.2d 1125; State v. Rollins (1967), 149 Mont. 481, 428 P.2d 462. Defendant argues that the probative value of these photographs was minimal as testimony regarding the vandalizing of the pickup was elicited from several witnesses in the case. Defendant argues that under State v. Bischert (1957), 131 Mont. 152, 308 P.2d 969, and Azure, supra, the evidence should not have been admitted and he is entitled to a new trial.
The State counters by admitting that the pictures do contain evidence of other crimes but that a proper notice of the same was given to the defendant as required by State v. Just (1979), 184 Mont. 262, 602 P.2d 957. The State argues that the pictures show the damage done in both incidents and they were admitted to corroborate the State’s theory on motive of the defendant. They were not gruesome and would not inflame the jury.
In our view the pictures were properly admitted in the discretion of the trial court as proof of motive of the defendant and therefore their probative value was substantial and was not outweighed by prejudice to the defendant.
Affirmed.
MR. JUSTICES HARRISON, WEBER, SHEEHY and GULBRANDSON concur.